IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LARS CAVI,

    Plaintiff,

v.

EVOLVING SYSTEMS NC, INC.,
RATEINTEGRATION, INC., AND
THOMAS THEKKETHALA,

    Defendants.

Civil Action No. 15-1211-RGA

## Memorandum Opinion

Sean A. Meluney, BERGER HARRIS LLP, Wilmington, DE; Alan L. Frank, ALAN L. FRANK LAW ASSOCIATES, Jenkintown, PA.

    Attorneys for Plaintiff

Herbert W. Mondros, Diane M. Coffey, MARGOLIS EDELSTEIN, Wilmington, DE; Paul N. Silverstein, Brian M. Clarke, ANDREWS KURTH KENYON LLP, New York, NY.

    Attorneys for Defendants

May 21, 2018

**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Lars Cavi filed this action on December 28, 2015. (D.I. 1). He filed an amended complaint on April 20, 2016. (D.I. 24). The amended complaint asserts various tort, contract, and quasi-contract claims against Defendants Evolving Systems, Inc., Evolving Systems NC, Inc. ("NC"), RateIntegration, Inc. ("RII"), and Thomas Thekkethala. (*See generally id.*). In light of my Memorandum Order of March 27, 2017, Evolving Systems, Inc. is no longer a defendant in this case. (D.I. 42 at 3).

Presently before the Court is Defendants' Motion for Summary Judgment (D.I. 98) and related briefing (D.I. 99, 104, 113). For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

This suit arises out of Plaintiff's recruitment to and subsequent employment with Defendant RII. RII is a Delaware corporation in the business of "mobile marketing." (D.I. 24 ¶ 4). Its principal place of business is in North Carolina. (*Id.*). RII is a subsidiary of Defendant NC. (*Id.* ¶ 8). Defendant Thekkethala is the former CEO and President of RII and was a member of its board of directors. (*Id.* ¶ 5).

The facts underlying this dispute are well-known to the parties and are fully set forth in the February 17, 2017 Report and Recommendations issued by United States Magistrate Judge Mary Pat Thynge. (*See* D.I. 37).

Defendants filed a motion to dismiss the amended complaint as to all counts but Count V on May 31, 2016. (D.I. 28). The motion was referred to Judge Thynge (D.I. 36), who issued a Report and Recommendations (D.I. 37). On March 27, 2017, I adopted the Report and

Recommendations except as to sections G, H, and I. (D.I. 42 at 3). Accordingly, I dismissed Count VI and all counts against Evolving Systems, Inc. (*Id.*).

Twelve counts remain. Plaintiff seeks to recover unpaid sales commissions and damages for Defendants' misrepresenting the value of Plaintiff's RII shares and concealing stock liquidation preferences. (D.I. 24 ¶ 12).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## III. DISCUSSION

In their motion, Defendants seek summary judgment on Plaintiff's counts for breach of fiduciary duty (Count I), common law fraud (Counts II, III), securities fraud (Count XIII), breach of the covenant of good faith and fair dealing (Counts VII and VIII), *quantum meruit* (Count IX), promissory estoppel (Counts X, XI), and unjust enrichment (Count XII). (*See generally* D.I. 99).

2

## A. Count I: Breach of Fiduciary Duty

First, Defendants move for summary judgment on Count I, which alleges breach of fiduciary duty against Defendant Thekkethala. (D.I. 24 ¶¶ 161–77). More specifically, Count I alleges that Thekkethala breached his fiduciary duties of loyalty, care, and good faith by making misrepresentations and omissions to Plaintiff in regard to the value of RII's shares, the value of Plaintiff's stock options and ownership interest in RII, and the "payout structure in the case of a sale of RII." (*Id.*).

Defendants argue summary judgment is appropriate as to Count I because there are no material facts in dispute in regard to the duties of care or loyalty owed to Plaintiff by Thekkethala. (D.I. 99 at 22–23). Defendants point to the exculpation provision in RII's Certificate of Incorporation, which shields the company's directors from liability for breaches of the duty of care. (*Id.* at 22). They maintain also that Plaintiff has failed to rebut the presumption of the business judgment rule. (*Id.* at 23–24).[1]

Plaintiff responds by arguing essentially that neither the exculpation clause nor the business judgment rule protects Thekkethala in this case because neither shields liability for acts done in bad faith. (D.I. 104 at 21). Here, Plaintiff alleges that Thekkethala did not act in good faith because "he intentionally deceived Cavi about the value of the stock and actively concealed liquidation preferences and management carve-out." (*Id.*).

I agree with Plaintiff and thus will deny Defendants' motion for summary judgment as to Count I.

---

[1] Defendants additionally argue that Thekkethala did not owe fiduciary duties to Plaintiff during the relevant time period, that is, when Plaintiff was merely a holder of stock options. (D.I. 99 at 22). Defendants ignore that Plaintiff alleges Thekkethala continued to make the same misrepresentations after Plaintiff became a shareholder in the company. (*See* D.I. 24 ¶ 167).

3

Under Delaware law, "directors owe a duty not to speak falsely" when communicating with shareholders. *In re Allergan, Inc. Stockholder Litig.*, 2014 WL 5791350, at *10 (Del. Ch. Nov. 7, 2014) (citing *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)). The Delaware Supreme Court has stated:

> Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty. It follows *a fortiori* that when directors communicate publicly or directly with shareholders about corporate matters the *sine qua non* of directors' fiduciary duty to shareholders is honesty.

*Malone*, 722 A.2d at 10. A director's providing false information to a shareholder could violate one or more of the duties of care, good faith, and loyalty. *Id.* at 12.

The business judgment rule is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 52 (Del. 2006). That presumption is rebutted where a plaintiff "shows that the directors breached their fiduciary duty of care or of loyalty or acted in bad faith." *Id.*

Here, Plaintiff alleges that Thekkethala knowingly made misrepresentations to Plaintiff in regard to, among other things, the value of the company, its shares, and Plaintiff's stock options. (D.I. 24 ¶¶ 164, 165, 167). Accordingly, to the extent the business judgment rule applies in this case, I think Plaintiff has rebutted it such that granting summary judgment to Defendants would not be appropriate.

Further, as to the exculpation provision in RII's Certificate of Incorporation, Plaintiff is correct that such a provision "may not exculpate directors for breaches of their duty of loyalty, or

4

for acts (or omissions) taken in bad faith." *Globis Partners, LP v. Plumtree Software, Inc.*, 2007 WL 4292024, at *15 (Del. Ch. Nov. 30, 2007); *see* 8 Del. C. § 102(b)(7)(i)–(ii).

Thus, similarly, I find the exculpation provision is not a basis to grant summary judgment to Defendants on this count.

Accordingly, I will deny Defendants' motion for summary judgment as to Count I.

### B. Counts II, III, and XIII: Common Law Fraud and Securities Fraud

Second, Defendants move for summary judgment on Counts II, III, and XIII, which allege common law fraud and securities fraud against all Defendants. Specifically, Counts II and III allege fraudulent inducement and equitable fraud, respectively, on the basis that Defendants misrepresented material facts to induce Plaintiff to accept employment with RII. (*See* D.I. 24 ¶¶ 178–276). Count XIII alleges that Defendants violated the North Carolina Securities Act, N.C. Gen. Stat. §§ 78A–1 *et seq.*, 78A–8, 78A–56(a)(2), and the Securities Exchange Act of 1934, Section 10(b) and Rule 10b-5 thereunder, by making various misrepresentations and omissions in connection with the purchase and sale of RII common stock. (D.I. 24 ¶¶ 391–454).

According to Defendants, these counts "are all premised on Plaintiff's purported reasonable reliance on alleged misrepresentations by Thekkethala regarding the value of RII's common stock." (D.I. 99 at 25). Defendants argue they are entitled to summary judgment on Counts II, III, and XIII because Plaintiff's reliance was not reasonable. (*Id.*). Defendants rely primarily on the Third Circuit's non-exhaustive list of factors for determining whether a plaintiff's reliance was reasonable in the context of a Rule 10b-5 claim. (*See id.* at 25–30). They assert Plaintiff's reliance was not reasonable because: (1) the alleged misrepresentation was inconsistent with the employment and option grant agreements governing Plaintiff and RII's relationship (*id.* at 26), (2) the evidence demonstrates Plaintiff "possesses more than sufficient

5

sophistication and experience to understand that [] he was not granted options that were 'in the money' by $3.99 per share" (*id.* at 28), (3) no pre-existing business or fiduciary relationship existed between Plaintiff and Thekkethala (*id.*), and (4) Plaintiff had the opportunity to detect the inaccuracy of the alleged misrepresentation (*id.* at 29). Further, Defendants point to the integration clause in Plaintiff's employment agreements. (*Id.* at 25).

Plaintiff counters, "Defendants understate their burden to establish lack of reasonable reliance on summary judgment." (D.I. 104 at 22). Plaintiff argues that, contrary to Defendants' assertion, the alleged misrepresentations do not contradict the employment agreements. (*Id.* at 23). Further, Plaintiff disagrees with Defendants' arguments in regard to Plaintiff's sophistication and ability to uncover the fraud. (*Id.* at 24–25). According to Plaintiff, "Defendants cannot prevail on their anti-reliance clause because Delaware and Third Circuit precedent preclude it as a matter of law." (*Id.* at 25).

To establish Section 10(b) and Rule 10b-5 violations, Plaintiff must show that he reasonably relied on the alleged misrepresentations or omissions that form the basis of his claim. *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 178 (3d Cir. 2003). "The 'reasonable reliance' element of a Rule 10b-5 claim requires a showing of a causal nexus between the misrepresentation and the plaintiff's injury, as well as a demonstration that the plaintiff exercised the diligence that a reasonable person under all of the circumstances would have exercised to protect his own interests." *Id.* The determination of reasonable reliance must "be made on a case-by-case basis based on all of the surrounding circumstances." *Id.* at 179. The Third Circuit has noted further that the absence of reasonable reliance "is in the nature of an affirmative defense." *Straub v. Vaisman & Co.*, 540 F.2d 591, 598 (3d Cir. 1976). Thus, the defendant bears the burden of establishing that a plaintiff's reliance was unreasonable. *Id.*

6

In *Straub*, the Third Circuit identified a non-exclusive list of factors for determining whether a plaintiff's reliance was reasonable. *See id.* Those factors include: (1) the existence of a fiduciary relationship; (2) the plaintiff's opportunity to detect the fraud; (3) the sophistication of the plaintiff; (4) the existence of a longstanding business or personal relationship; and (5) the plaintiff's access to the relevant information. *Id.* Further, the Third Circuit has held that the existence of a non-reliance clause is but one factor to consider in determining whether a plaintiff's reliance was reasonable. *AES*, 325 F.3d at 181. It has acknowledged also that "a buyer in a non-reliance clause case will have to show more to justify its reliance than would a buyer in the absence of such a contractual provision. For this reason, cases involving a non-reliance clause in a negotiated contract between sophisticated parties will often be appropriate candidates for resolution at the summary judgment stage." *Id.*

Considering the facts cited by the parties and the relevant case law, I am not convinced Plaintiff's federal securities law claim can be resolved on a motion for summary judgment.

As an initial matter, I do not think the clause in Plaintiff's employment agreements is an explicit non-reliance clause. Rather, it reads more like an integration clause. As to the factors identified in *Straub*, I find them to be "sufficiently mixed so as to create a genuine issue of material fact concerning the reasonableness" of Plaintiff's reliance. *See In re Daimlerchrysler AG Secs. Litig.*, 294 F. Supp. 2d 616, 622 (D. Del. 2003). I think factors three and four cut against Plaintiff, given his prior experience with option grants (*see* D.I. 99-5, Exh. 3 at pp. 55–56 (Cavi Dep. 118:17–119:21)) and the lack of any longstanding business or personal relationship between the parties. It seems undisputed that Plaintiff and Thekkethala were in a fiduciary relationship, however, once Plaintiff became a stockholder in the company. Further, it is not entirely clear to me that Plaintiff would have been able to detect the fraud nor is it clear that he

7

had access to all relevant information. Finally, while it seems to me that the employment and option grant agreements are not entirely consistent with the alleged misrepresentations, I do not think, as Defendants maintain, there is such a "glaring inconsistency" that Plaintiff's reliance could not have been reasonable as a matter of law. (D.I. 99 at 27).

Thus, I am not persuaded Defendants have established the absence of reasonable reliance as a matter of law. I think there are genuine issues of material fact concerning Plaintiff's reliance. Thus, I will deny Defendants' motion for summary judgment on Plaintiff's federal securities law claim.

Plaintiff also brings Count XIII pursuant to sections 78A-1 *et seq.*, 78A-8 and 78A-56(a)(2) of the North Carolina Securities Act.

Section 78A-8 of that Act "closely parallels the Rule 10b-5 antifraud provision of the Securities Exchange Act." *State v. Davidson*, 506 S.E.2d 743, 748 (N.C. Ct. App. 1998). Accordingly, "[c]ases construing the federal rule are instructive when examining" the North Carolina statute. *Id.* Section 78A-8 prohibits fraud "in connection with the offer, sale or purchase of any security, directly or indirectly." *See* N.C. Gen. Stat. § 78A-8. That prohibition is made actionable under section 78A-56(a)(1) of the statute. *Piazza v. Kirkbride*, 785 S.E.2d 695, 709 (N.C. Ct. App. 2016). Because section 78A-56(a)(1) requires "proof akin to common law fraud claims," a plaintiff must prove, among other things, "justifiable reliance." *Id.*

For the same reasons explained above, I will deny Defendants' motion for summary judgment as to Plaintiff's claims brought pursuant to section 78A-8 of the North Carolina Securities Act. I cannot conclude as a matter of law that Plaintiff did not justifiably rely on Defendants' alleged misrepresentations.

8

Section 78A–56(a)(2) "is the equivalent under North Carolina law of a claim under section 12(a)(2) of the Securities Act of 1933." *Austin v. Regal Inv. Advisors, LLC*, 2018 WL 324710, at *14 (N.C. Super. Ct. Jan. 8, 2018). It imposes liability for materially false statements or omissions in connection with the offer or sale of a security. N.C. Gen. Stat. § 78A–56(a)(2). Under 78A–56(a)(2), a plaintiff is not required to prove justifiable reliance. *Austin*, 2018 WL 324710, at *14. Accordingly, Defendants' argument in regard to Plaintiff's reliance fails as to Plaintiff's claims brought pursuant to section 78A–56(a)(2) of the North Carolina Securities Act.

Finally, to establish his claims for common law fraud under Delaware law, Plaintiff similarly must show that he reasonably relied on the representations that form the basis of his claims. *Brown v. Robb*, 583 A.2d 949, 955 (Del. 1990). Delaware law allows for an anti-reliance clause in a contract to, under certain circumstances, bar fraud claims. *See Addy v. Piedmonte*, 2009 WL 707641, at *19 (Del. Ch. March 18, 2009). As Plaintiff points out in his response (D.I. 104 at 25), however, in adopting in part the Magistrate Judge's Report and Recommendations, I found that the clause in Plaintiff's employment agreements is not a clear anti-reliance clause under Delaware law such that it "does not preclude [Plaintiff's] reliance on Defendants' misrepresentations and omissions relating to the value of RII" (*see* D.I. 42 at 3; D.I. 37 at 17). Thus, the integration clause is not dispositive on the issue of Plaintiff's reliance. For the same reasons explained above, I will deny Defendants' motion for summary judgment on Plaintiff's common law fraud claims. I cannot conclude as a matter of law that Plaintiff's reliance was not reasonable.

Thus, Defendants' motion for summary judgment is denied as to Counts II, III, and XIII.

### C. Counts VII and VIII: Breach of the Covenant of Good Faith and Fair Dealing

Third, Defendants move for summary judgment on Counts VII and VIII, which allege breach of the covenant of good faith and fair dealing against all Defendants. (D.I. 24 ¶¶ 330–41). In regard to Count VII, Plaintiff contends Defendants "fail[ed] to provide stock options that were of value." (*Id.* ¶ 331). As to Count VIII, Plaintiff alleges Defendants "fail[ed] to properly pay Cavi the commissions he earned on new sales." (*Id.* ¶ 337).

According to Defendants, "it is undisputed that Plaintiff had express employment agreements with RII throughout his employment." (D.I. 99 at 31). They argue that, as to Count VII, those employment agreements "provided for the issuance of stock, not stock that was 'of value' at the time of a future sale." (*Id.*). Further, Defendants assert that, as to Count VIII, "Plaintiff is not entitled to the commissions he seeks because the sales at issue were merely renewals of already-existing subscriptions and thus were not eligible for commissions under the Compensation Model." (*Id.*).

Plaintiff responds that, as to Count VII, "Defendants failed to provide stock options that were of value, and deceived Cavi by hiding the liquidation preferences that made them worthless." (D.I. 104 at 25–26). Further, Plaintiff argues that, as to Count VIII, Defendants failed to pay Plaintiff for "new sales" and "attempted to retroactively apply a new (and less favorable) commission structure after Cavi had already secured the sales." (*Id.* at 26).

Because I find the covenant of good faith and fair dealing inapplicable in light of the employment agreements[2] governing Plaintiff and RII's relationship, I will grant summary judgment to Defendants on Counts VII and VIII.

---

[2] I note the possibility that the employment agreements might be found unenforceable if Plaintiff prevails on his fraudulent inducement claim at trial. If the agreements are unenforceable, then the covenant of good faith and fair dealing does not apply.

10

Under Delaware law, the implied covenant of good faith and fair dealing "inheres in every contract and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009) (citation omitted). It is "the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement." *Allen v. El Paso Pipeline GP Co., LLC*, 2014 WL 2819005, at *10 (Del. Ch. June 20, 2014). Invoking the doctrine is a "cautious enterprise," *see Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010), and "should be [] rare and fact-intensive," *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (citations omitted). Given its "narrow purpose, the implied covenant is only rarely invoked successfully." *Kuroda*, 971 A.2d at 888.

"A claim for breach of the implied covenant 'is contractual.'" *NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647, at *16 (Del. Ch. Nov. 17, 2014). "As such, the elements of an implied covenant claim are those of a breach of contract claim: a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Id.*

"When presented with an implied covenant claim, a court first must engage in the process of contract construction to determine whether there is a gap that needs to be filled." *Allen*, 2014 WL 2819005, at *10. "During this phase, the court decides whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject, revealing a gap that the implied covenant might fill." *Id.* A court must determine whether a gap exists because "[t]he implied covenant will not infer language that contradicts a clear exercise of an express contractual right." *Nemec*, 991 A.2d at

11

1127. "Moreover, because the implied covenant is, by definition, implied, and because it protects the spirit of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue." *Fisk Ventures, LLC v. Segal,* 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008); *see also Allied Capital Corp. v. GC-Sun Holdings, LP*, 910 A.2d 1020, 1032 (Del. Ch. 2006) ("[I]mplied covenant analysis will only be applied when the contract is truly silent with respect to the matter at hand . . . .").

Between the amended complaint and Plaintiff's response to Defendants' motion, there appear to be three categories of Defendants' conduct underlying Plaintiff's good faith and fair dealing claims. They are: (1) Defendants' failure to provide stock options that were "of value," (2) Defendants' failure to pay Plaintiff commissions on new sales and Defendants' applying a less favorable commission structure to Plaintiff's prior sales, and (3) Defendants' deceiving Plaintiff by failing to disclose stock liquidation preferences. (*See* D.I. 24 ¶¶ 331, 337; D.I. 104 at 25–26).

The employment agreements governing Plaintiff and RII's relationship are silent on neither (1) nor (2). To the contrary, the employment agreements expressly cover those subjects. They include a paragraph related to the stock options Plaintiff was to receive as part of his compensation package and a section related to Plaintiff's receiving commissions for "NEW sales revenue." (*See* D.I. 99-2, Exh. D at pp. 44, 47 (January 21, 2009 employment agreement); *id.*, Exh. E at pp. 49, 53 (January 24, 2010 employment agreement); *id.*, Exh. F at pp. 55, 58–59 (September 15, 2010 employment agreement)). Thus, the express terms of the employment agreements will control in regard to those claims. *See Kuroda,* 971 A.2d at 888. As to (3), whether Defendants deceived Plaintiff by failing to disclose stock liquidation preferences is

12

irrelevant because it has nothing to do with any implied obligation in the employment agreements. Therefore, (3) is not a basis to invoke the implied covenant.

Accordingly, I find the implied covenant of good faith and fair dealing does not apply because there are no gaps in the employment agreements, as to stock options or sales commissions, that the implied covenant might fill. *See Allen*, 2014 WL 2819005, at *10; *Kuroda*, 917 A.2d at 888. This is not the type of narrow situation in which Delaware law contemplates application of the covenant.

Thus, I will grant summary judgment to Defendants on Counts VII and VIII.

### D. Counts IX, X, XI, and XII: Quasi-Contract Claims

Finally, Defendants move for summary judgment on Plaintiff's claims for quasi-contractual relief. They are Counts IX, X, XI, and XII. Count IX asserts *quantum meruit* against Defendants NC and RII. (D.I. 24 ¶¶ 342–47). Counts X and XI assert promissory estoppel against all Defendants. (*Id.* ¶¶ 348–84). Count XII asserts unjust enrichment against all Defendants. (*Id.* ¶¶ 385–90).

Defendants argue that in light of Plaintiff's "express employment agreements" with RII, relief is barred under theories of *quantum meruit*, promissory estoppel, and unjust enrichment. (D.I. 99 at 32, 34–36).

As Plaintiff notes in response (D.I. 104 at 26–28), I previously allowed Plaintiff's breach of contract and quasi-contract claims to proceed at the motion to dismiss stage (*see generally* D.I. 42). I stated, "I think Plaintiff can pursue a multitude of conflicting and possibly unnecessary claims." (*Id.* at 3). I believe the same is true now. In light of Plaintiff's fraudulent inducement claim, the enforceability of the employment agreements remains in dispute. At trial, Plaintiff may win on his fraudulent inducement claim, rendering the employment agreements

13

unenforceable, and then pursue relief under the quasi-contractual theories in Counts IX to XII. Thus, I will not grant summary judgment to Defendants on Counts IX to XII on the basis that the employment agreements bar relief under the theories advanced by those counts.

Defendants additionally argue that, under 10 Del. C. § 8111, Counts IX and XII are time-barred. (D.I. 99 at 33). Defendants made a similar argument in their Rule 12(b)(6) motion to dismiss. (*See* D.I. 21 at 30, 33). As Plaintiff points out, in adopting in part the Magistrate Judge's Report and Recommendations, I held that the three-year statute of limitations, under 10 Del. C. § 8106, applies. (*See* D.I. 42 at 3; D.I. 37 at 9–10). Thus, Counts IX and XII are not time-barred. I see no reason to change my ruling.

Finally, Defendants urge that Counts X to XII, brought against Thekkethala in his individual capacity, "cannot stand" because there is no dispute that Thekkethala was acting on behalf of RII during his interactions with Plaintiff. (D.I. 99 at 37). Defendants point out that, in the amended complaint, Plaintiff "specifically asserts that Thekkethala acted 'on behalf of Defendants' when promises were made to [Plaintiff]." (*Id.*). Plaintiff responds, "The problem with [Defendants'] argument is that Thekkethala is one of the 'Defendants.'" (D.I. 104 at 28). Further, Plaintiff argues "a Defendant should not win a count purely because of semantics." (*Id.*).

I agree with Defendants and thus will grant summary judgment to Thekkethala only, on Counts X to XII.

"As a general rule, so far as personal liability on corporate contracts is concerned, officers of corporations are in the same position as agents of private individuals and are not liable on corporate contracts as long as they do not act and purport to bind themselves individually."

14

*Tekstrom, Inc. v. Savla*, 2006 WL 2338050, at *10 (Del. Super. Ct. July 31, 2006) (quoting *Brown v. Colonial Chevrolet Co.*, 249 A.2d 439, 441 (Del. 1968)).

As to the counts at issue, both promissory estoppel and unjust enrichment are quasi-contractual theories of relief. In Delaware, unjust enrichment is "a theory of recovery to remedy the absence of a formal contract." *See Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008) (citing *In re Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*, 1997 WL 529587, at *17 (Del. Super. Ct. Jan. 29, 1997)). Promissory estoppel is similarly tied to contract principles, though its ultimate purpose is to prevent injustice. *See Lord v. Souder*, 748 A.2d 393, 398, 400 (Del. 2000); *Grunstein v. Silva*, 2009 WL 4698541, at *9 (Del. Ch. Dec. 8, 2009). It is "viewed as a consideration substitute for promises which are reasonably relied upon, but which would otherwise not be enforceable." *Souder*, 748 A.2d at 400.

In light of these general principles, I think Thekkethala must have acted in his individual capacity in order to be held personally liable under the quasi-contract theories in Counts X to XII.

Here, Plaintiff has not alleged the promises underlying his promissory estoppel claims were made by Thekkethala while acting in his individual capacity. Similarly, Count XII does not allege that Thekkethala acted in his individual capacity in failing to pay Plaintiff for the value of his work and services. In fact, there appears to be no dispute that Thekkethala acted solely on behalf of RII during his interactions with Plaintiff. That Thekkethala is named in the complaint as one of the Defendants is beside the point. Because there appears to be no dispute that Thekkethala was not acting in his individual capacity at any time relevant to the counts at issue, I will grant summary judgment in Thekkethala's favor only, on Counts X, XI, and XII.

## IV. CONCLUSION

A separate order will be entered.